FILED
2017 Sep-08 AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MATTHEW DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:15-cv-02164-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Joseph M. Duncan, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Mr. Duncan timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Duncan was thirty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education, as well as training to be a certified nurse's aide. (Tr. at 341.) His past work experiences include employment as a forklift operator, warehouse maintenance worker, fast food

1

worker, and furniture-frame builder. (*Id.*) Mr. Duncan claims that he became disabled on April 24, 2011, due to leg, hip, knee, lower back and breast pain, depression, and anxiety. (Tr. at 106.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Duncan meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 108.) He further determined that Mr. Duncan has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's fracture of the distal left radius, status post open reduction and internal fixation, and anxiety disorder are considered "severe" based on the requirements set forth in the regulations. (Tr. at 109.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Mr. Duncan's allegations to be totally credible, and he determined that he has the following RFC:

> to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can occasionally lift twenty pounds

and frequently lift ten pounds; can occasionally push, pull, grip, and perform fine fingering manipulations with his left hand; has no limitations on his right upper extremity or his ability to stand, walk, or sit; should not crawl or climb; and is restricted to unskilled work with occasional personal interaction.

(Tr. at 111–12.)

According to the ALJ, Mr. Duncan is unable to perform any of his past relevant work and he is a "younger individual," as those terms are defined by the regulations. (Tr. at 116.) He determined that "transferability of skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as ticket taker, laundry sorter, and laundry folder. (Tr. at 117.) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from November 1, 2022, through the date of this decision." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Duncan alleges that the ALJ's decision should be reversed and remanded for several reasons. First, he argues with the weight the ALJ gave to his treating physician's opinion, a one-time examining physician's opinion, and the medical expert's testimony. Plaintiff also contends that the Appeals Council erred when it concluded that the administrative record as a whole supported the decision of the ALJ.

### A. Weight Given to the Medical Source Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); see also *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, though, medical consultants or medical experts

are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); SSR 96-6p. Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's

findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

### 1. Treating Physician

Dr. Farouk Raquib, a neurologist, is Plaintiff's treating physician. Dr. Raquib first saw Plaintiff on November 30, 2011, after Plaintiff had had surgery on his left wrist. (Tr. at 500.) Plaintiff had fractured his left wrist falling from a horse in April 2011, and Dr. Raquib diagnosed him with chronic left wrist pain following left wrist fracture, status post open reduction internal fixation, reflex sympathetic dystrophy, and anxiety/panic disorder. (*Id.*) On April 10, 2013, Dr. Raquib completed an RFC Questionnaire indicating that Plaintiff had extreme limitations regarding his ability to sit, stand, and walk. (Tr. at 491.) Specifically, Dr. Raquib opined that Plaintiff was limited to sitting for no more than two hours at a time, and standing for no more than one hour at a time, during an eight hour work day. (Tr. at 491.) Dr. Raquib also opined that Plaintiff could use his right hand, fingers on the right hand, and right arm only ten percent of the time during a typical eight hour workday and that he could never use his left hand, fingers on the left hand, or left arm. (Tr. at 492). He also stated that Plaintiff would need to take fifteen-minute breaks every hour during an eight-hour workday, and that Plaintiff would never be able to lift more than ten pounds. (*Id.*) Therefore, as of April 2013, Dr. Raquib was

of the opinion that Mr. Duncan was not physically capable of working an eight hour day, five days a week. (Tr. at 492.)

The ALJ considered Dr. Raquib's RFC Questionnaire but gave it little weight. The ALJ had good cause to do so. Specifically, the ALJ rejected Dr. Raquib's opinion because the ALJ was unable to ascertain how Plaintiff's left hand impairment would result in such restrictions for Plaintiff's right hand, especially when Plaintiff is right hand dominant. (Tr. at 115). Additionally, the ALJ noted that Dr. Raquib's conclusions are inconsistent with Plaintiff's own assessment of his abilities. Plaintiff stated on his own Function Report that he had no limitations as far as sitting, standing, or walking, bending, reaching, or climbing. (Tr. at 359–66.) Plaintiff stated that he can lift ten pounds and walk a mile without stopping to rest, which also contrasts with Dr. Raquib's opinions. (Tr. at 364.) Plaintiff said he does a little cleaning, does laundry, prepares food once a day, goes grocery shopping once a week, and he takes care of a dog, which are all activities that require use of Plaintiff's wrists. (Tr. at 360-63). These activities suggest that Plaintiff is capable of doing more activities than Dr. Raquib identified. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) ("[A]n ALJ does not need to give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion.") (citing *Phillips*, 357 F.3d at

1241). The Court finds no error in the ALJ's treatment of Dr. Raquib's RFC Questionnaire.

### 2. One-Time Examining Physician

On December 6, 2013, Dr. Lloyd C. Dyas, an orthopedic surgeon, examined Plaintiff on referral for left wrist pain. (Tr. at 682.) Dr. Dyas's examination notes indicate that Plaintiff had pain with range of motion but had normal 5/5 strength in his wrist. (Tr. at 684.) He found no indication of joint instability. (*Id.*) Plaintiff had negative Phalen's test, Tinel's sign test, Finkelstein's test, and carpal tunnel compression test. (*Id.*) He had normal range of motion in his hand and no discomfort. *Id.* He had no tenderness to palpation, pain with compression, atrophy, edema, or cyanosis. (*Id.*) He had no tenderness, swelling, or deformities in his left forearm. (Tr. at 683.) Dr. Dyas diagnosed Plaintiff with left post-traumatic osteoarthritis in the wrist. (Tr. at 684.) Dr. Dyas later completed an RFC Questionnaire on January 17, 2014, concluding that Plaintiff could sit for no more than two hours at a time, walk no more than one city block at a time, and occasionally lift and carry no more than ten pounds. (Tr. at 687–88.) Dr. Dyas also determined that Plaintiff could use his hands, fingers, and arms less than half of the time and was incapable of working. (Tr. at 688.)

The ALJ gave little weight to Dr. Dyas's opinion. Substantial evidence supports that decision. Dr. Dyas examined Plaintiff only once, on December 6, 2013, before Plaintiff had surgery to remove the hardware from his left wrist. (Tr. at 682.) Accordingly, the record does not indicate that Dr. Dyas has an ongoing treatment relationship with Plaintiff during the time under consideration by the ALJ, so his findings are not entitled to any particular consideration. 20 C.F.R. §§ 404.1502, 404.1527(c)(2); *Crawford*, 363 F. 3d at 1160. Furthermore, Dr. Dyas's opinion in the RFC Questionnaire is inconsistent with his own examination findings. 20 C.F.R. § 404.1527(c)(2)–(4); *Crawford*, 363 F. 3d at 1159–60. Despite essentially normal findings in Plaintiff's wrist, hand, and forearm, Dr. Dyas concluded that Plaintiff could not use his left hand, fingers, or arm. (Tr. at 492.)

Finally, Plaintiff's major disagreement with the ALJ's opinion appears to be that the ALJ noted in his opinion that Plaintiff's counsel apparently paid Drs. Raquib and Dyas for their RFC Questionnaires. Plaintiff suggests that this concern was the sole reason that the ALJ rejected the opinions of the two physicians. However, although the ALJ mentioned that the physicians may have been paid, the ALJ also articulated multiple additional reasons for discounting these opinions, as stated above, and the Court finds no error in the ALJ's analyis.

   3.   **Non-Examining Medical Consultant**

Because the record contained conflicting opinions regarding Plaintiff's alleged impairments, the ALJ called upon Dr. Arthur Lorber, a medical expert and board certified orthopedic surgeon, to examine Plaintiff's records and testify at the supplemental administrative hearing regarding his opinion on Plaintiff's impairments. (Tr. at 129–36.) Dr. Lorber testified that Plaintiff did not meet or equal a disability "Listing" found in the Listings of Impairments. (Tr. at 134–35.) Dr. Lorber stated that there was no evidence in the record to support Dr. Raquib's diagnosis of possible reflex dystrophy syndrome. (Tr. at 134.) Dr. Lorber also discussed Dr. Dyas's findings that Plaintiff had full range of motion in his wrist and no evidence of any neurological focal deficits or reflex dystrophy syndrome. (Tr. at 134.) Dr. Lorber concluded that Plaintiff's pain was likely due to ongoing discomfort from the fixation device in his left wrist, which was later removed in January 2014. (Tr. at 134.) Dr. Lorber determined that Plaintiff had the RFC to perform a limited range of light work, including the occasional pushing, pulling, and doing fine fingering; Dr. Lorber also concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk, and sit with restrictions. (Tr. at 134–35). Dr. Lorber concluded that Plaintiff did not have any restrictions on his right hand. (Tr. at 135.) Substantial evidence supports the ALJ's decision to afford substantial weight to the RFC opined by Dr. Lorber because his

opinion was more consistent with the objective medical evidence in the record and the plaintiff's own statements of his abilities.

### C. Appeals Council

After the ALJ issued his unfavorable decision, Plaintiff submitted additional records to the Appeals Council, specifically treatment records from Dr. Dyas, laboratory work, and mental health records. (Tr. at 8-96.) The Appeals Council denied review after considering whether the ALJ's decision was contrary to the weight of all the evidence and ultimately found that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. at 1-7). This Court finds that the additional evidence submitted to the Appeals Council does not render the ALJ's denial of benefits erroneous.

According to the Commissioner's regulations, when new material evidence is submitted to the Appeals Council:

> The Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 CFR § 404.970(b). Thus, the Appeals Council may deny review after consideration of new evidence if the new evidence does not undermine the ALJ's decision. *Id.*

"[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1258 (11th Cir. 2007). Specifically, when the Appeals Council has denied review following submission of new evidence, a reviewing court must consider whether the new evidence renders the ALJ's decision erroneous and unsupported by substantial evidence. *See id.* at 1261-62.

Most of these records Plaintiff submitted to the Appeals Council were not relevant to the time period that was under consideration by the ALJ, which was from November 1, 2011 to April 11, 2014. For example, Plaintiff submitted a supplemental RFC Questionnaire from Dr. Dyas, which was dated March 23, 2015. (Tr. at 11-12). However, this supplemental RFC Questionnaire is not relevant to whether Plaintiff was disabled on or before April 11, 2014. (Tr. at 11-96). Furthermore, the record already contained an RFC Questionnaire from Dr. Dyas, which contained limitations actually more restrictive than the supplemental RFC

Questionnaire presented to the Appeals Council. (Compare tr. 11-12 with 687-88). The remaining evidence Plaintiff submitted from Dr. Dyas was dated from October 2014 to March 2015, which was also after the ALJ's decision. (Tr. at 32-66).

Plaintiff also submitted medical records relating to his mental health and a psychiatric evaluation but these records were dated June 2014, also after the ALJ's decision. (Tr. at 76- 96). Although Plaintiff submitted his prescription medical history that shows that Dr. Dyas prescribed medication for him during the period under consideration by the ALJ (tr. at 17-22), Plaintiff has not shown how the fact that he was taking certain prescription medication would change the ALJ's decision.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Duncan's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 7, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704